UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

and JULIE YEITER
    Plaintiff—Intervenor,

v.

EDEN FOODS, INC., and
MICHAEL POTTER,

    Defendants.

Case No. 2:22-cv-10881-BAF-KGA
Hon. Bernard A. Friedman

---

Miles Uhlar (P65008)
Equal Employment Opportunity Commission
Attorney for Plaintiff EEOC
865 Patrick V. McNamara Building
477 Michigan Ave.
Detroit, MI 48226
(313) 774-0015

Jennifer B. Salvatore (P66640)
SALVATORE PRESCOTT PORTER &
PORTER, PLLC
Attorney for Plaintiff—Intervenor Julie Yeiter
105 E. Main St.
Northville, MI 48167
(248) 679-8711
salvatore@spplaw.com

---

## **COMPLAINT OF INTERVENING PLAINTIFF JULIE YEITER**

    Plaintiff JULIE YEITER, through her attorneys SALVATORE PRESCOTT

PORTER & PORTER, PLLC, complains against Defendants EDEN FOODS INC., and MICHAEL POTTER, as follows:

## PARTIES

1. Plaintiff Julie Yeiter is an individual residing in the Eastern District of Michigan.

2. Defendant Eden Foods, Inc., is a private company operating in Clinton, Michigan within the Eastern District.

3. Defendant Michael Potter is an individual and President/owner of Eden Foods, Inc., who resides within the Eastern District.

## JURISDICTION AND VENUE

4. Federal question jurisdiction lies in this Court under 28 U.S.C. § 1331 because Plaintiff brings claims under federal law. This Court likewise has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Based on Defendant Eden Foods Inc.'s location and Defendant Michael Potter's residence in this District, personal jurisdiction is proper in this Court.

6. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(1) as it is the district in which Defendant Eden Foods, Inc., is located and where Defendant Potter resides, and under § 1391(b)(2) as it is the district in which a substantial part of the actionable events and omissions occurred.

## FACTUAL ALLEGATIONS

7.     On or around August 28, 2017, Plaintiff Julie Yeiter began her employment with Defendant Eden Foods, Inc. (hereafter "Eden Foods"), in the company's marketing department.

8.     Ms. Yeiter was a seasoned and experienced marketing professional when she was hired by Eden Foods. She was an excellent employee and within six months was promoted to Marketing Department Manager.

9.     Defendant Eden Foods is a leader in the natural foods industry and its products are found on shelves across America.

10.    Defendant Michael Potter is the President and owner of Eden Foods.

11.    Throughout Plaintiff's employment at Eden Foods, Mr. Potter created a sexually hostile work environment and a hostile work environment based on gender. Some examples of Mr. Potter's conduct that created a hostile work environment for female employees are the following:

12.    In or around March of 2018, Mr. Potter emerged from his office, stood next to the desk of a female employee, and announced, "I just pulled a boner."

13.    In or around April of 2018, Mr. Potter referred to an employee who had gone home early as a "fucking cunt."

14.    Upon hearing this remark, Plaintiff requested of Mr. Potter that he not speak that way, after which Defendant Potter grew visibly flustered.

15. Despite Mr. Potter's reaction, Plaintiff did not hesitate to object when Mr. Potter made gendered comments or comments of a sexual nature about or to female employees.

16. In or around April of 2018, after noticing that a female employee was wearing a tank top, Mr. Potter came into Plaintiff's office and said of this worker: "tell her to cover up. If this is what she wears when it's cold, what the fuck is she going to wear when it's hot."

17. About a week later, Plaintiff observed Defendant Potter brush his hand across an opening in the back of a female employee's blouse.

18. Plaintiff witnessed Defendant Potter engage in unwanted touching of his female employees on a regular basis, included rubbing their shoulders and giving them back rubs.

19. Mr. Potter regularly leaned over female employees who were seated at their desks, ostensibly to look at their computer screens. He did this in the presence of Plaintiff and others.

20. On at least one occasion, Plaintiff observed a female employee asking Mr. Potter to stop touching her.

21. In or around May of 2018, Mr. Potter smacked the butt of a female employee in the presence of several other employees.

22. Also in or around May of 2018, after a female employee in a short dress

4

bent over causing a coworker to comment on what she saw, Defendant Potter announced, "too bad I missed it."

23. Around the same time and in front of several employees, when a female employee was putting on a sweatshirt, Mr. Potter approached her, grabbed the sweatshirt and reached for the zipper at the level of her crotch and zipped it up for her without permission.

24. In the spring of 2018, Mr. Potter pulled a chair up very close to a female employee as she typed social media posts, prompting her to include sexual phrases such as "gotta get it" and "get it now" and "how much do you want it" while laughing loudly.

25. In or around August of 2018, Defendant Potter referred to a prospective female employee who had just interviewed for a job with the company as "a tall drink of water" and commented on "those legs" of hers.

26. In or around September of 2018, when discussing the hand-labelling of products, Defendant Potter stated, "Do it by hand. That's a hand job."

27. In or around January of 2019, Mr. Potter kissed a female employee on her forehead while wishing her a happy birthday.

28. In or around February of 2019, Mr. Potter discussed bringing "the young girls from customer service" to a trade show because "they looked like the brand" and added that they could attend a customer dinner with him.

5

29. At a meeting in or around April of 2019, Mr. Potter seated himself at the table beside a young, female employee instead of at the head of the table in the seat reserved for him. He proceeded to touch this employee's calf with his foot throughout the meeting, making her visibly uncomfortable.

30. Also in or around April of 2019, Defendant Potter said, "It was the tits" and gestured with open hands while describing something he had seen.

31. Defendant Potter also frequently used derogatory names for women. In one such instance, Defendant Potter yelled at a female designer about an ad, and told her she was "being a bitch," and that she needed to listen to him.

32. Potter's sex-based conduct as described above was a routine and continuous occurrence and often happened on a daily basis throughout Ms. Yeiter's employment at Eden Foods.

33. In addition to witnessing Defendant Potter engage in conduct of this nature throughout her employment with Defendants, during this time Mr. Potter also would regularly touch Plaintiff and/or physically intrude on Plaintiff's space when she was at work, finding excuses to sit or stand close to her or to touch her while speaking to her.

34. Given the hostile work environment created by Defendant Potter, in or around the fall of 2018, a former Eden Foods employee filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6

35. Soon thereafter, the company's head of human resources ("HR"), Cindy Farmer, informed Plaintiff that an EEOC charge had been filed by a former direct report of Plaintiff and told her that she might be asked to provide an interview during the investigation.

36. Plaintiff understood that Ms. Farmer told her this because Plaintiff (as one of the oldest female employees at Eden Foods) had demonstrated a willingness to object to and to speak openly about Mr. Potter's sexually harassing conduct.

37. Plaintiff made it clear to Ms. Farmer that she would cooperate with the EEOC investigation.

38. In or around December of 2018, Ms. Farmer resigned as head of HR at Eden Foods.

39. Ms. Farmer was replaced by Sherri Liang as head of HR in or around January of 2019.

40. Shortly after Ms. Liang assumed the HR position, Plaintiff informed her, "you have a mess on your hands" due to Mr. Potter's relentless sex harassment and creation of a hostile work environment based on gender, and in light of the pending EEOC charge.

41. This comment constituted a protected report of harassment to the new director of Human Resources.

42. In addition to these comments to HR, Plaintiff repeatedly made it

known that she objected to Mr. Potter's conduct and that she was willing to speak out about it. Indeed, Plaintiff had even spoken directly to Mr. Potter regarding his inappropriate conduct.

43. On or around May 20, 2019, while the EEOC investigation was pending, Plaintiff was terminated.

44. Plaintiff's termination was in retaliation for objecting to the hostile work environment Mr. Potter created at Eden Foods; for speaking out about Mr. Potter's conduct both with Mr. Potter and with HR; and due to her express willingness to participate in the pending EEOC investigation.

45. On August 23, 2019, Ms. Yeiter filed a charge with the EEOC for retaliation. She then amended her charge to include claims of a sexually hostile and gender-based hostile work environment.

### COUNT I
### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – HOSTILE WORK ENVIRONMENT BASED ON SEX
### M.C.L. § 37.2701
### (against both Defendants)

46. Plaintiff hereby incorporates all preceding paragraphs.

47. Plaintiff was an employee of Defendant Eden Foods and was covered by and within the meaning of the Elliott-Larsen Civil Rights Act. Defendant Potter was and is an agent of Eden Foods and thus he meets the definition of an employer under the Elliott-Larsen Civil Rights Act.

48. During her employment with Defendants, Plaintiff was subjected and exposed to sexual and gender-based unwelcome comments and conduct of an offensive and overtly sexual nature, constituting sex and/or gender-based harassment and resulting in the creation of a hostile work environment, in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2701 *et seq*.

49. The hostile work environment was created by management-level employees: specifically, by Defendant Eden Foods's President and owner, Defendant Michael Potter.

50. Defendants, therefore, were aware of the harassment and yet failed to take remedial action to stop it.

51. As a direct and proximate result of the Defendants' actions, Plaintiff has sustained injuries and damages including, but not limited to, the loss of earnings and earning capacity; mental and emotional distress including anxiety and mental anguish; humiliation and embarrassment; physical distress; and the loss of the ordinary pleasures of everyday life.

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT –**
**HOSTILE WORK ENVIRONMENT BASED ON SEX**
**(against Defendant Eden Foods, Inc.)**

52. Plaintiff hereby incorporates all preceding paragraphs.

53. Plaintiff is a member of a protected group who was subjected and exposed to frequent unwelcome sexual communications and conduct based on

gender.

54. These comments and conduct were sexual in nature and/or explicitly gender-based.

55. Mr. Potter's sexual and gendered communications were severe and pervasive, substantially interfered with Plaintiff's employment, and created a hostile and offensive work environment.

56. Defendant Eden Foods knew or should have known of the existence of the hostile work environment, as it was created by the President and owner of Defendant Eden Foods, Michael Potter. Defendant Eden Foods's response, therefore, manifests indifference or unreasonableness, in light of the facts the employer knew or should have known.

57. The actions of the Defendant Eden Foods and its agents were negligent or intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

58. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

59. As a direct and proximate result of Defendant Eden Foods's actions, Plaintiff has sustained injuries and damages including, but not limited to, the loss of earnings and earning capacity; mental and emotional distress including anxiety and mental anguish; humiliation and embarrassment; physical distress; and the loss of

the ordinary pleasures of everyday life.

## COUNT III
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – RETALIATION
## M.C.L. § 37.2701
## (against both Defendants)

60.     Plaintiff hereby incorporates all preceding paragraphs.

61.     Plaintiff engaged in protected activity under M.C.L. § 37.2701(a) when she objected to Defendant Potter's sexual and gender-based comments and conduct; when she expressed willingness to participate in an EEOC investigation into his sex harassment; and when she reported his harassment to Defendant Eden Foods's new director of human resources.

62.     Defendants knew about Plaintiff's protected activity.

63.     Defendants took adverse action against Plaintiff because of her protected activity by terminating her employment.

64.     Plaintiff's protected conduct motivated this retaliation by Defendants.

65.     Defendants' retaliation against Plaintiff was intentional and/or was with reckless indifference to Plaintiff's rights.

66.     As a direct and proximate result of the Defendants' actions, Plaintiff has sustained injuries and damages including, but not limited to, the loss of earnings and earning capacity; mental and emotional distress including anxiety and mental anguish; humiliation and embarrassment; physical distress; and the loss of the

ordinary pleasures of everyday life

## COUNT IV
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT – RETALIATION
### (against Defendant Eden Foods, Inc.)

67. Plaintiff hereby incorporates all preceding paragraphs.

68. Plaintiff engaged in protected activity when she objected to Mr. Potter's sexual and gender-based comments and conduct; when she expressed willingness to participate in an EEOC investigation into his sex harassment; and when she reported his harassment to Defendant Eden Foods's new director of human resources.

69. Defendant Eden Foods knew about Plaintiff's protected activity.

70. Defendant Eden Foods took adverse action against Plaintiff when it terminated her employment.

71. Plaintiff's protected conduct motivated this retaliation by Defendant Eden Foods.

72. Defendant Eden Foods's retaliation against Plaintiff was intentional and/or was with reckless indifference to Plaintiff's rights.

73. As a direct and proximate result of the Defendants' actions, Plaintiff has sustained injuries and damages including, but not limited to, the loss of earnings and earning capacity; mental and emotional distress including anxiety and mental anguish; humiliation and embarrassment; physical distress; and the loss of the ordinary pleasures of everyday life.

## RELIEF REQUESTED

Plaintiff seeks all available relief and remedies requested herein, including but not limited to:

a. compensatory damages;

b. punitive damages;

c. attorneys' fees and costs; and

d. all other relief, equitable and otherwise, allowed by law and deemed appropriate by the judge or jury.

Date: April 28, 2022

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Attorney for Plaintiff
105 E. Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplaw.com

*Attorney for Plaintiff*

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff JULIE YEITER, by and through her undersigned counsel, and hereby demands a trial by jury of all the issues in this case.

Date: April 28, 2022

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Attorneys for Plaintiff—Intervenor
Julie Yeiter

105 E. Main Street
Northville, MI 48167
(248) 679-8711
salvatore@sppplaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/ Kelly Murawski
Kelly Murawski, Legal Secretary